UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD ROGERS,                           )         CASE No. 3:07CV70
                                          )
            Petitioner,                   )         JUDGE DAN AARON POLSTER
                                          )
      v.                                  )         Magistrate Judge George J. Limbert
                                          )
JULIUS WILSON, Warden                     )
                                          )
            Respondent.                   )         **REPORT AND RECOMMENDATION**
                                          )         **OF MAGISTRATE JUDGE**
                                          )

Pursuant to 28 U.S.C. § 2254, Petitioner Richard Rogers, a prisoner in custody at the

Richland Correctional Institution, seeks review of his Huron County, Ohio Court of Common Pleas

convictions for trafficking in cocaine, possession of cocaine, carrying a concealed weapon, and

possession of a weapon while under a disability.  ECF Dkt. #1.  The case was referred to the

undersigned for a report and recommendation.  ECF Dkt. #4.  For the following reasons, the

undersigned recommends that the Court DISMISS the instant petition with prejudice:

**I.      SYNOPSIS OF THE FACTS**

The Sixth District Court of Appeals of Ohio set forth the facts of this case on direct appeal.

These binding factual findings "shall be presumed to be correct", and Petitioner has "the burden of

rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1);

*Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999).  As set

forth by the Sixth District Court of Appeals, the facts are:

> {¶ 2} On the night of March 23, 2004, Trooper Kevin Velatean of the Ohio State
> Highway Patrol was stationed in his cruiser at the intersection of State Route 103 and
> Theo Moll Drive, on the outskirts of the city of Willard, in southern Huron County.
> He observed a car with its rear license plate light out as it was traveling past him on
> Theo Moll Drive, heading toward nearby Neal Zick Road, an area recognized by
> Velatean as being a high drug area. When Velatean pulled up behind the car, he saw
> the vehicle twice move left of center. He pulled the car over and, in order to maximize
> visibility, activated all of the white lights on his cruiser.
>
> {¶ 3} Inside the vehicle were four males, including appellant, who was riding in the

back seat. Velatean exited his cruiser and made his way toward the driver's side of the pulled-over vehicle. As he approached, the driver of the car leaned his head out of the window and asked why he was being stopped. According to Velatean, the driver's movement of leaning out to talk betrayed a desire to keep Velatean away from the vehicle, and suggested that there was something to hide somewhere inside.

{¶ 4} Velatean characterized the behavior of all of the car's occupants as unusually active.FN1 To his mind, this was yet another indicator that there was something that the occupants wished to hide located somewhere inside the vehicle. In addition to the strange behaviors, Velatean also detected the odor of raw marijuana emanating from the car. Altogether, these circumstances were described by Velatean as being so atypical as to cause him to become fearful for his own safety.

> FN1. Although the extent of this reported unusual activity is not readily apparent on the videotape during the first few minutes after the stop, it does become increasingly clear as the tape progresses.

{¶ 5} In order to minimize any danger, Velatean escorted the driver from his car back to the police cruiser. In addition, he radioed for backup, indicating his suspicion that there could be drugs or a weapon located inside the vehicle.

{¶ 6} The driver was noted to be intoxicated, failed sobriety tests, and was eventually arrested for OVI.

{¶ 7} Trooper Monte Sexton of the Ohio State Highway Patrol and Sergeant Gregory Gadberry of the Huron County Sheriff's Department were among the officers who responded to Velatean's call for help. Sexton testified that, like Velatean, he could smell the odor of marijuana issuing from the car. He also testified that appellant was moving quite a bit and fidgeting to excess. According to Sexton, appellant seemed more nervous than anyone else he had ever detained-so nervous, in fact, that it was making Sexton, himself, feel nervous and uncomfortable.

{¶ 8} Based on the smell of marijuana, the officers decided to search the vehicle. They removed the occupants one at a time, and, each time, Gadberry conducted what he characterized as a limited search for weapons in order to ensure the safety of the investigating officers.

{¶ 9} The first person searched was the passenger who occupied the front seat. He had what was apparently a marijuana cigarette in his pocket.

{¶ 10} Appellant was searched next. Leaning forward, he placed his hands on the car. Gadberry patted him down from the rear and felt along his waistband. Gadberry also checked his pants pockets, but found nothing.

{¶ 11} After conducting the search from the rear, Gadberry turned appellant around and unzipped his large, bulky overcoat. At that point, Velatean, who was standing a short distance away, saw a handgun in a shoulder holster that appellant was wearing, and immediately shouted, "Gun, gun, gun."

{¶ 12} Appellant was arrested for carrying a concealed weapon. Upon a subsequent, more thorough search of appellant's person, he was discovered to be in possession of 75 rocks of crack cocaine.

{¶ 13} Appellant moved to suppress the evidence obtained by the officers, on the grounds that such evidence was obtained as a result of an unlawful search. On June

15-16, 2004, the trial court held a hearing to consider appellant's motion. After hearing testimony by Officers Velatean, Gadberry, and Sexton, and after viewing a videotape of the subject search and arrest, the trial court denied appellant's motion. In making its determination, the trial court specifically found the pat down search to have been lawful. The court explained:

{¶ 14} "In order to search the vehicle, officers would need to lean into the vehicle with their backs to the Defendant and the others. They would be very vulnerable to sudden attack by either a lunge towards them or their weapons or use of the passengers [sic] own weapons.

{¶ 15} "The Court finds the unzipping of the outer jacket is no more intrusive than the patting down. For some individuals, the physical touch is more intrusive.

{¶ 16} "Sgt. Gadberry did not find the holster or gun from the rear pat down probably because these items swung away from the body of the Defendant.

{¶ 17} "Based on the size and magnitude of the holster and weapon, it likely would have been found by a frontal pat down. However, the bulkiness of the coat could have hidden a small weapon or knife.

{¶ 18} "Applying Terry to these facts, the isolated area and the number of men, the Court finds it reasonable under Terry of Ohio [sic] to unzip the jacket.

{¶ 19} "The 77[sic] rocks of cocaine was [sic] not found as a result of the Terry frisk but as the result of the lawful arrest for carrying a concealed weapon.

{¶ 20} "The passenger could be ordered to exit from the car pursuant to Pennsylvania vs. Mimms, 434 U.S. 106 1977, 98 S.Ct. 330, 54 L.Ed.2d 331 and Maryland vs. Wilson, 519 U.S.1977. State vs. Moore allows the search of the vehicle with a DUI plus the smell of Marijuana.FN2

> FN2. The Court expressly found that Velatean had been trained and had extensive experience smelling raw marijuana, and that Sexton had had training on the detection by odor of burnt and raw marijuana and had smelled it on half a dozen arrests.

{¶ 21} "Terry v. Ohio allows the protective search in this high drug area with four large males, a DUI arrest, and extensive movements especially by the Defendant. Drugs and weapons are often found together. Nothing was found in the pockets and the unzipping is permitted here."

{¶ 22} On June 17, 2004, appellant entered pleas of no contest to charges of cocaine trafficking, cocaine possession, carrying a concealed weapon, and having a weapon under disability, with a one-year firearm specification. On August 17, 2004, the trial court sentenced appellant to six year terms of imprisonment on each of the cocaine possession and trafficking charges, to a twelve month term of imprisonment for the concealed weapon charge and to a ten month term of imprisonment for the weapon under disability charge. All of the prison terms were ordered to run concurrently, with the exception of the one year term for the firearm specification. Appellant was thus sentenced to a total of seven years in prison.

*State v. Rogers*, Case Nos. H-04-030, H-04-042, 2005 WL 2471693, (Ohio App. 6 Dist. Oct. 7, 2005).

## II.      PROCEDURAL HISTORY

### A.      State trial court

The January, 2004 term of the Grand Jury for Huron County, Ohio returned an indictment charging Petitioner with: (Count 1) trafficking in drugs, in violation of Ohio Revised Code ("O.R.C.") § 2925.03(A)(2)(C)(4)(e); (Count 2) possession of drugs, in violation of O.R.C. § 2925.11(A)(C)(4)(d); (Count 3) carrying a concealed weapon, in violation of O.R.C. § 29293.12(A); and (Count 4) having weapons while under a disability, in violation of O.R.C. § 2923.13(A)(3). ECF Dkt. #7, Ex. 1.  The indictment was filed in Case No. CRI-2004-0289.  ECF Dkt. #7, Ex. 2.

The May, 2004 term of the Grand Jury for Huron County, Ohio returned a second indictment, charging Petitioner with: (Count 1) trafficking in drugs, in violation of O.R.C. § 2925.03(A)(2)(C)(4)(e) with a firearm specification pursuant to O.R.C. § 2941.141; (Count 2) possession of drugs, in violation of O.R.C. § 2925.11(A)(C)(4)(d) with a firearm specification pursuant to O.R.C. § 2941.141; (Count 3) having a weapon while under a disability, in violation of O.R.C. § 2923.13(A)(3), with a firearm specification pursuant to O.R.C. § 2941.141.  ECF Dkt. #7, Ex. 4.  The indictment was filed in Case No. CRI-2004-0481.  ECF Dkt. #7, Ex. 5.

On June 1, 2004, Petitioner filed a motion to suppress evidence obtained during a warrantless search.  ECF Dkt. #7, Ex. 3.  On June 15 and 16, 2004, the Huron County Court of Common Pleas held a hearing and ultimately denied the motion.  ECF Dkt. #7, Ex. 6.

On June 17, 2004, Petitioner entered a plea of no contest to: (Count 3, Case No. CRI-2004-0289) carrying a concealed weapon, in violation of O.R.C. § 2923.12(A); (Count 1, Case No. CRI-2004-0481) trafficking in drugs with a firearm specification, in violation of O.R.C. §§ 2925.03(A)(2)(C)(4)(e), 2941.141; (Count 2, Case No. CRI-2004-0481) possession of drugs with a firearm specification, in violation of O.R.C.§§ 2925.11(A)(C)(4)(d), 2941.141; and (Count 3, Case No. CRI-2004-0481) having weapons under a disability with a firearm specification, in violation of O.R.C. §§ 2923.14, 2923.12(A)(3), 2941.141.  ECF Dkt. #7, Ex. 7.

On August 17, 2004, the trial court sentenced Petitioner to: 12 months of imprisonment for Count 3 in Case No. CRI-2004-0289; 6 years of imprisonment for Count 1 in Case No. CRI-2004-0481; 6 years of imprisonment for Count 2 in Case No. CRI-2004-0481; 10 months of imprisonment

-4-

for Count 3 in Case No. CRI-2004-0481, with all sentences to run concurrently and a firearm specification to run consecutively, for a total sentence of 7 years of imprisonment. ECF Dkt. #7, Ex. 8. The trial judge also imposed: a $7,500 fine for each of Counts 1 and 2 in Case No. CRI-2004-0481, a 5-year driver's license suspension, and 3 to 5 years of post-release control. *Id.*

### B.    Direct Appeal

On September 16, 2004, Petitioner, through counsel filed a notice of appeal to the Ohio Court of Appeals for the Sixth District. ECF Dkt. #7, Ex. 9. On October 13, 2004, the Court of Appeals denied the motion for Petitioner's failure to file a separate notice of appeal for each of the trial court's cases, Case No. CRI-2004-0289 and Case No. CRI-2004-0481. ECF Dkt. #7, Ex. 10.

On November 12, 2004, Petitioner filed a motion for leave to file a delayed appeal. ECF Dkt. #7, Ex. 11. On December 20, 2004, the court granted the motion. ECF Dkt. #7, Ex. 12.

On April 8, 2005, Petitioner filed an appellate brief asserting the following assignment of error:

> THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT OVERRULED HIS MOTION TO SUPPRESS EVIDENCE, WHERE SUCH EVIDENCE WAS OBTAINED THROUGH A WARRANTLESS, UNREASONABLE SEARCH OF HIS PERSON, IN VIOLATION OF HIS RIGHTS UNDER THE U.S. AND OHIO CONSTITUTIONS.

ECF Dkt. #7, Ex. 13 at i.

On October 7, 2005, the Ohio Court of Appeals for the Sixth District affirmed Petitioner's conviction. ECF Dkt. #7, Ex. 15.

### C.    Supreme Court of Ohio

On November 18, 2005, Petitioner, *pro se*, filed a notice of appeal to the Supreme Court of Ohio. ECF Dkt. #7, Ex. 16. Petitioner filed a memorandum in support of jurisdiction asserting the following proposition of law:

> WHEN A TRIAL COURT OVERRULES A TIMELY MOTION TO SUPPRESS EVIDENCE, THAT WAS OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT A DEFENDANT IS DENIED DUE PROCESS AND EQUAL PROTECTION OF THE LAW AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTION.

ECF Dkt. #7, Ex. 17.

On March 8, 2006, the Supreme Court of Ohio denied jurisdiction in an unexplained journal

-5-

entry.  ECF Dkt. #7, Ex. 18.

### D.      Petition for Sentence Modification

On September 6, 2006, Petitioner filed a motion for a sentence modification with the trial court.  ECF Dkt. #7, Ex. 19.  Petitioner stated that he was close to attaining a G.E.D., he had been taking parenting classes, and he was regularly attending religious services.  *Id.*

On September 21, 2006, the trial court denied the motion because Petitioner had not served the minimum prison term in order to be eligible for judicial release.  ECF Dkt. #7, Ex. 20.

### E.      Federal Petition for Writ of Habeas Corpus

On January 5, 2007, Petitioner filed the instant petition.  ECF Dkt. #1; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266, 270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to prison authorities).  Petitioner asserts the following ground for relief:

> GROUND FOR RELIEF 1: PETITIONER WAS DENIED DUE PROCESS AND EQUAL PROTECTION OF THE LAW WHEN HIS STATE CONVICTION WAS OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.
>
> SUPPORTING ARGUMENTS: This case involves and illegal "pat-down" of petitioner, and an unreasonable appellate court decision denying relief on the issue. The evidence in this case *does not* support the reasonable, objective basis for conducting the type of search to which petitioner was subjected. The evidence in this case clearly establishes that the officer conducting the search in question went far beyond the permissible scope of the search.
>
> The Appellate Court in this case correctly stated the manner in which the search was conducted, *i.e.*, petitioner was searched…Leaning forward, he placed his hands on the car. The officer patted him down from the rear and *felt along his waistband*. The officer also checked his pants pockets, but found nothing. The officer then turned petitioner around and unzipped his jacket, revealing the weapon, which ultimately led to the discovery of drugs.
>
> Current case law authorizes only a carefully limited search **of the outer clothing** on the basis of the facts established in this case. State Exhibit 1, (a videotape of the search), shows that the officer conducting the search went far beyond the limited search by reaching directly into Petitioner's packets [sic], lifting Petitioner's coat and reached into the waistband of his pants, and opening Petitioner's coat without even attempting to conduct a frontal pat-down. The trial Court's reasoning in allowing expansion of the search, and the Appellate Court's affirming opinion, on the basis offered, is objectively unreasonable.
>
> No officer testified, nor was there any evidence introduced, that there existed individualized probable cause to conduct anything more than a *limited pat-down* of

-6-

Petitioner's outer clothing. No testimony was offered that the pat-down produced evidence of a possible weapon or contraband. Moreover, from both his testimony and the videotape, it appears that this officer committed this illegal search either without knowledge of the limitations, or with a total disregard for those limits.

In an attempt to justify the illegal search, the Appellate Court characterized the actions of the officer conducting the search as a *limited additional step* of unzipping the coat in order to determine whether [Petitioner] was carrying a weapon. The Appellate Court furthered its disregard for United States Supreme Court precedent by stating, "it would be anomalous to permit an officer to conduct a pat-down search for weapons in order to protect himself, but preclude the officer from taking *further limited* steps to effectuate that purpose when the initial pat-down *proves inconclusive*.

In the present case, it is undisputed the officer conducing the search could conduct a proper search in order to ensure the safety of himself and his fellow officers. Contrary to the opinion of the Appellate Court, however, a proper search does not establish that a police officer may do whatever deemed necessary to determine if a suspect is armed. This case clearly requires reversal in accordance with the [sic]

Petitioner was subjected to a search that was more characteristic of an investigative or evidentiary search. As such, all evidence resulting from the search should have been suppressed. Failure of the trial court to suppress evidence obtained in the manner described in the facts of this case cannot be justified. More importantly, and for the purpose of this action, pursuant to the standard of review set forth in 28 U.S.C. §2254(d)(1), the Appellate Court's decision is more than wrong, it is objectively unreasonable.

ECF Dkt. #1.  Petitioner also filed a brief in support of his petition.  ECF Dkt. #1, Attach. 1.  On May 25, 2007, Respondent file a return of writ.  ECF Dkt. #7.  On June 20, 2007, Petitioner filed a traverse.  ECF Dkt. #8.

## III.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

The Supreme Court has held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend

federal-state comity).

It is not necessary to analyze the applicability of procedural barriers in the instant case.  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The Parties agree that the AEDPA statute of limitations is not an issue in this case.  *See* ECF Dkt. #1, 7 at 10-11.  Further, since the undersigned ultimately concludes that the instant petition lacks merit, it is not necessary to further address the other applicable procedural barriers.  *See Granberry*, 481 U.S. at 135; *Prather*, 822 F.2d at 1421-22.

**IV**.     **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 5, 2007, well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)     resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state

-8-

> court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell*, 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A.   Decisions of lower federal courts may not be considered.
>
> B.   Only the holdings of the Supreme Court, rather than its dicta, may be considered.
>
> C.   The state court decision may be overturned only if:
>
>> 1.   It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;
>>
>> 2.   the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or
>>
>> 3.   'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or
>>
>> 4.   the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

-9-

D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey*, 271 F.3d at 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice."  *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).   The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993) overruled in part on other grounds by *Thompson v. Keohane*, 516 U.S. 99, 111 (1995).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

-10-

## V.      ANALYSIS

The undersigned recommends that the Court dismiss the instant petition for a lack of merit because Petitioner's claim is not cognizable under 28 U.S.C. § 2254.

Petitioner asserts that the trial court's ruling  was an objectively unreasonable application of federal law pertaining to the Fourth Amendment right to be free from unreasonable searches and seizures.  ECF Dkt. #1, Attach. 1 at 8.  Petitioner argues that the police exceeded the scope of a *Terry* stop by feeling along his waistband, checking his pants pockets, and opening his coat without first attempting a frontal pat-down.  *Id.* at 11.

Respondent asserts that this ground for relief is foreclosed pursuant to *Stone v. Powell*, 428 U.S. 465 (1976), which bars federal habeas corpus relief on grounds of an unconstitutional search and seizure when the state prisoner has been provided with a full and fair opportunity to litigate his Fourth Amendment claim.  ECF Dkt. #7 at 11-13.

### A.      The Supreme Court has held that Fourth Amendment claims are not cognizable in habeas corpus proceedings unless the petitioner has been denied a full and fair opportunity to litigate his claim.

In *Stone v. Powell,* the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S. at 494.  The Supreme Court indicated that the purpose of a writ of habeas corpus is to ensure prisoners are not held on convictions when there has been a deprivation of a constitutional right resulting in an unreliable adjudication.  *Id.* at 479, 485 (the *Stone* Court cited various circuit courts employing this rationale, and the Court ultimately determined that judicial integrity does not require suppression of illegally obtained evidence).

The *Stone* Court conceded that judicial integrity has been advanced as a justification for the exclusionary rule, but the primary purpose of the exclusionary rule is to deter government actors from conducting unreasonable searches and seizures.  *Stone*, 428 U.S. at 484 citing *Mapp v. Ohio*, 376 U.S. 643, 658 (1961) ("The *Mapp* Majority justified the application of the rule to the States on

-11-

several grounds, but relied principally upon the belief that exclusion would deter future unlawful police conduct."); *Elkins v. U.S.*, 80 S.Ct. 206, 217 (1960).  Following *Mapp*, the Court endorsed the exclusionary rule as a deterrent tool.  *Id*. quoting *United States v. Calandra*, supra, 414 U.S. at 338, 348 (1974) ("the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect . . . .").  The *Stone* Court concluded that the deterrent effect must be the primary reason for the exclusionary rule because, if judicial integrity were the justification: unconstitutionally seized evidence would have to be excluded even if the defendant assented to its introduction; standing would not be a requirement to challenge admissibility of evidence; illegally seized evidence could not be used in grand jury proceedings; and a defendant could not be impeached with illegally seized evidence.  *Id*. at 485-86.  The Court noted that none of these results are true.  *Id*. citing *Henry v. Mississippi*, 379 U.S. 443 (1965); *Alderman v. United States*, 394 U.S. 165 (1969); *Gerstein v. Pugh*, 420 U.S. 103 (1975); *Frisbie v. Collins*, 342 U.S. 519 (1952); *Calandra*, 414 U.S. at 338; *Walder v. United States*, 347 U.S. 62 (1954).  The *Stone* Court stated that "the physical evidence sought to be excluded is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant."  *Id*. at 490 quoting *Kaufman v. U.S.*, 394 U.S. 217, 237 (Black, J., dissenting)("A claim of illegal search and seizure under the Fourth Amendment is crucially different from many other constitutional rights; ordinarily the evidence seized can in no way have been rendered untrustworthy by the means of its seizure and indeed often this evidence alone establishes beyond virtually any shadow of a doubt that the defendant is guilty").  Therefore, allowing illegally obtained evidence does not compromise the integrity of the judicial process in most cases.  *Id*. at 491.

The *Stone* Court determined that, since the exclusionary rule was not a function of judicial integrity and writs of habeas corpus are, then the determinative question is whether applying the exclusionary rule in habeas corpus proceedings will further deter illegal searches and seizures. *Stone*, 428 U.S. at 493.  The Court concluded that reviewing potential Fourth Amendment violations in habeas corpus proceedings will have no substantial deterrent effect because law enforcement authorities generally will not "fear that federal habeas review might reveal flaws in a search or

seizure that went undetected at trial and on appeal." *Id*.  Moreover, any incremental benefit in deterring illegal police behavior that is gained by reviewing searches and seizures in habeas corpus proceedings is outweighed by the burden it will place on the criminal justice system.  *Id*. Consequently, Fourth Amendment claims are not cognizable in habeas corpus proceedings unless the petitioner has been denied a full and fair opportunity to litigate his claim.  *Id*. at 469, 482, 494-95.

**B.**     **The Sixth Circuit employs a two-step inquiry for determining whether a petitioner had a full and fair opportunity to litigate his claim.**

The Sixth Circuit Court of Appeals uses a two-step inquiry in order to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court: "First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted); *Riley v. Gray*, 674 F.2d 522, 527 (6th Cir. 1982).

In the abstract, Ohio's mechanism for resolution of Fourth Amendment claims is adequate. *Riley*, 674 F.2d at 526.  Therefore, the determinative questions in the case at bar are: (1) whether a procedural mechanism failed in Petitioner's case; and (2) whether Petitioner's presentation of his Fourth Amendment claim was frustrated as a result of that failure.  In order to determine whether a procedural mechanism failed, the Court must determine if the state court took cognizance of the claim and ruled in light thereof.  *Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977).  In *Machacek,* the Sixth Circuit Court of Appeals held that there was no failure of a procedural mechanism when the state courts had provided an evidentiary hearing outside of the presence of the jury and an appellate court decision that was based upon a review of the record.  213 F.3d at 951-52.

**C.**     **Petitioner was afforded a full and fair opportunity to litigate his 4th Amendment claim.**

Based on the facts of the case at bar and existing Sixth Circuit precedent, the undersigned

-13-

finds that there was no failure of Ohio's procedural mechanism because: Petitioner was able to file a motion to suppress evidence along with a memorandum in support; the trial court held a lengthy evidentiary hearing; Petitioner's attorney made an opening statement; the state presented evidence to meet its burden of establishing the officer's reasonable suspicion; Petitioner's attorney had an opportunity to cross-examine the state's witnesses; Petitioner's attorney made a closing argument; and Petitioner's attorney was afforded additional time to conduct legal research on the specific issue of whether a police officer can unzip an overcoat during a *Terry* frisk.  ECF Dkt. #7, Ex. 6b.  Further, after the suppression motion was overruled, Petitioner appealed the decision to the Ohio Court of Appeals and the Court of Appeals reviewed the trial court's application of law *de novo*. ECF DKt. #7, Ex. 15.  Lastly, both the trial court and the Court of Appeals issued memorandum opinions articulating their rationale.  ECF Dkt. #7, Ex. 6a, 15.  Since there was no failure of the Ohio courts' procedural mechanisms, no further inquiry is necessary.

Accordingly, the undersigned recommends that the Court dismiss the instant petition with prejudice.

## VI.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


Date: March 28, 2008                                        _____*/s/George J. Limbert*_____
                                                                       George J. Limbert
                                                                       United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-14-